# CASE NO. 24-1444

---

## IN THE

## UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

---

DONNA JONES, Appellant

v.

FAIRFAX COUNTY SCHOOL BOARD, Appellee

---

ON APPEAL FROM
UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

---

## OPENING BRIEF OF APPELLANT

---

SUBMITTED BY:
Seth J. B. Obed, VSB#82482
OBED LAW, PLLC
429 N Saint Asaph Street.
Alexandria, VA 22314
[t](703)567-4052;[f](703)894-4940
sobed@obedlaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF CASE ......................................................................4

SUMMARY OF ARGUMENT .............................................................24

ARGUMENT ...................................................................................25

CONCLUSION ................................................................................54

STATEMENT REGARDING ORAL ARGUMENT ...............................54

## TABLE OF AUTHORITIES

**Cases**                                                                **Page**

*Bickerstaff v. Vassar College*, 195 F.3d 435 at 454-455 (2nd Cir. 1999) ………….45

*Coffey v. Chem. Specialties, Inc.*, 1993 U.S. APP. LEXIS 21430 (4th Cir. 1993) ..…………………………………………………………………….44-45

*Cowgill v. First Data Techs., Inc.,* 41 F.4th 370 (4th Cir. 2022)………………50-51

*Denese G. v. Dep't of the Treasury*, EEOC Appeal No. 0120141118 (Dec. 29, 2016)

*EEOC v. Fed. Express Corp.,* 513 F.3d 360 (4th Cir. 2008) ………………………37

*EEOC v. Womble Carlyle Sandbridge & Rice, LLP*, 616 Fed. Appx. 588 (4th Cir. 2015) ...................................................................................... 26-27

*Elledge v. Lowes Homes Centers, LLC*, 979 F.3d 1004 (4th Cir. 2020) …………………………………………………………………...32, 37

*Graves v. Finch Pruyn & Co.*, 457 F.3d 181 (2nd Cir. 2006) ……………………………………………………27, 36

*Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454 (4th Cir. 2012) ……………………………………………25, 35

*Hannah v. United Parcel Serv.*, 72 F.4th 630 (4th Cir. 2023) ……………………………………………27-28

*Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78 (1st Cir. 2012) ……………………………………………38

*Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991)…..46

*Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954 (4th Cir. 2021) ……………………………………………33

*Price v. Norfolk S. Corp.*, 2022 U.S. Dist. LEXIS 175238 (E.D. Va. 2022) …………………………………………38

*Reyazuddin v. Montgomery County*, 789 F.3d 407 (4th Cir. 2015) …………………………………………………35

*Sydnor v. Fairfax Cnty., Va.*, No. 1:10CV934, 2011 U.S. Dist. LEXIS 22287, 2011 WL 836948 (E.D. Va. Mar. 3, 2011)………………………………………….

*Tartaro-McGowan v. Inova Home Health, LLC*, 2024 U.S. App. LEXIS 1074, 91 F.4th 158 (4th Cir. 2024)…….

*Thersa v. Louis DeJoy, United States Postal Service*,
Appeal No. 0120182764; Hearing No. 440-2018-00103X; Agency No. 4J-530-0028-17, *14 (U.S. EEOC June 23, 2021)…………………………………..…..37

*Tyndall v. Nat'l Educ. Centers, Inc. of California*,
31 F.3d 209 (4th Cir. 1994) ………………………………………………33-34

*US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) …………………………28, 37

*Wilson v. Dollar General Corp.*, 717 F.3d 337 (4th Cir. 2013) ……………………………………………………25, 35-36, 38-39

*Woodson v. Int'l Bus. Machines, Inc.*,
2007 WL 4170560 (N.D. Cal. Nov. 19, 2007))……………………………37

**Statutes**

28 U.S.C. §1291 ............................................................................. 1
28 U.S.C. §1331 ............................................................................. 1
28 U.S.C. §1391(b) …………………………………………………1
29 CFR §1630.9………………………………………………10, 42, 52
29 CFR §1630.12 …………………………………………………..58
38 U.S.C. §4323(c)(2) …………………………………………………1
42 U.S.C. §12101, et seq. ……………………………………………1, 10
42 U.S.C. §12112 …………………………………………………5

**Other Authorities**

Virginia Workers' Compensation Commission Order, October 5, 2023……4, 25, 53

Memorandum Opinion and Order, April 19, 2024…………………………….

# JURISDICTIONAL STATEMENT

Appellate jurisdiction is proper based on 28 U.S.C. §1291. The final order was entered in the District Court on April 19, 2024, granting of summary judgment for Defendant Fairfax County School Board ("FCPS") against Plaintiff Donna Jones, fully disposing of Plaintiff's claims. The Notice of Appeal was filed May 15, 2024. The underlying District Court action concerns a question of federal law regarding violations of the Americans with Disabilities Act ("ADA") prohibiting discrimination against an employee on the basis of disability under 42 U.S.C. §12101, et seq., with proper subject matter jurisdiction under 28 U.S.C. §1331. The Fourth Circuit is the proper venue based on the underlying action taking place in the United States District Court for the Eastern District of Virginia based on events giving rise to the action taking place in Fairfax County, Virginia. 38 U.S.C. §4323(c)(2), 28 U.S.C. §1391(b).

# STATEMENT OF ISSUES

The issues presented involve two decisions by the District Court, first in granting summary judgment for the School Board, and second in denying summary judgment for Ms. Jones.

**ISSUE I**: In granting summary judgment, the District Court erroneously concluded in the Memorandum Opinion (Dkt. No. 77), Section III(B). that:

(1)    Ms. Jones did not establish that a reasonable accommodation existed which FCPS could provide and failed to provide as:

(A) The accommodation requests were of reasonable temporary time periods, and the court erroneously applied tests from cases where employees sought permanent or indefinite accommodations, and failed to consider:

(i) Ms. Jones's essential job functions for the relevant temporary time period(s) and whether the job functions cited by FCPS were applicable to the temporary time period requested and whether or not Ms. Jones's essential job functions could be performed for a temporary time period remotely;

(ii) each separate request for accommodation or request to revisit accommodations by Ms. Jones, based on independent changing circumstances such as surgery, a worsening condition, and/or ineffective accommodations;

(iii) whether or not an accommodation of partial telework could be offered tailored around the job functions which could be performed remotely;

(iv) other resource teachers and/or other teachers did not already share tasks encompassed by Ms. Jones's job functions such that any task sharing would have a *de minimis* or negligible impact;

2

(B) The District Court erroneously concluded that FCPS did not fail to engage in the interactive process to establish a meaningful and effective reasonable accommodation for Plaintiff by refusing to grant any meaningful telework, or other accommodation, from the outset and refusing to discuss or consider the precise limitations of Ms. Jones's disability such that reasonable accommodations existed which were not found during the interactive process and Ms. Jones's requested accommodations other than telework were also denied by employer.

(C) The District Court failed to analyze evidence in the light most favorable to Ms. Jones, namely:

(i) Gave little deference to Ms. Jones's statements regarding her job responsibilities;

(ii) Ms. Jones was actually open to less than "full-time telework";

(iii) Ms. Jones's doctor was only requesting a mold and dust free environment;

(iv) Co-worker Monica Kim's detailed analysis of Ms. Jones's job functions was not considered.

**Issue II**: The District Court erred by denying summary judgment for Plaintiff for the reasons stated in the Memorandum Opinion (Dkt. No. 77), Section III(A). In denying summary judgment the District Court:

(1) Erroneously concluded that: (i) FCPS did not fail to provide effective accommodation to Plaintiff in response to any of the independent requests for accommodation; (ii) that employer's March 2, 2022 stated accommodations did not fail as a matter of law to constitute effective or actual accommodations; (iii) that FCPS's own policies did not demonstrate that telework was reasonable for the intended purpose of recovery from surgery.

(2) Failed to adequately consider: (i) the undisputed facts established by the parties' Virginia Workers' Compensation Commission ("VWCC") Order, that Plaintiff's workplace environment caused her disability as of January 14, 2022; (ii) that Plaintiff's workplace environment remained the same from the time period of January 14, 2022 (and as contemplated in the VWCC Order) at least past the time period of Plaintiff's first request for temporary telework (March 31, 2022).

## STATEMENT OF CASE

Ms. Jones filed her Complaint against FCPS for discrimination on the basis of disability pursuant to the ADA, among other claims. Plaintiff Donna Jones

4

alleged claims against Fairfax County School Board ("FCPS") regarding discrimination under the Americans with Disability Act ("ADA") prohibiting discrimination against an employee on the basis of a disability. 42 U.S.C. §12101 et seq., §12112; 29 CFR §1630.9. Defendant FCPS is alleged to have discriminated against Plaintiff by failing to make a reasonable accommodation for Plaintiff's lung disability which included obstructed airways, Reactive Airway Disease, and its relevant symptoms and effects having pulmonary nodules, notably difficulty breathing, susceptibility to environmental factors and viruses, and increased effects after surgery. In so doing, Ms. Jones alleged that FCPS failed to accommodate Ms. Jones's numerous requests for accommodation and that FCPS failed to engage in the interactive process to determine a reasonable accommodation. In denying Ms. Jones her accommodation requests, Ms. Jones alleged FCPS pressured Ms. Jones to agree to token accommodations by threatening to end or alter her long-time employment with FCPS. FCPS wrongfully and repeatedly denied Plaintiff the opportunity to perform her job safely pursuant to the central tenets of the ADA.

After the close of discovery, the parties filed cross-motions for summary judgment. After full briefing, oral argument was heard on the cross-motions on March 17, 2023.

## Summary of Facts

Plaintiff has been employed by FCPS since 2005 and began working at Braddock Elementary School ("BES") within the FCPS system in August of 2019 as a BES Science Resource Teacher. See, *Donna Jones January 29, 2024 Deposition Transcript*, "Jones Deposition II", p. 12, L16-21, p. 13, L3-22. (JA 00977-978). BES is one of many FCPS campuses, as FCPS "is one of the largest school divisions in the U.S., with 199 schools and centers, over 24,800 employees, and over 181,000 students". See *FCPS Objection to Interrogatory No. 21*, JA 00516; JA 01073-1074.

### Job Duties

Ms. Jones took on the additional duties of Math Resource Teacher at BES in October of 2019. JA 00978, L18-22; 00979, L1-8. Plaintiff's role was modified in August of 2020 to be Math and Science Resource Teacher at BES for grades K-2, which continued through the 2021-2022 school year. JA 00979, L9-22; 00980, L1-19; see also, *Virginia Worker's Compensation Commission January 24, 2022 Final Hearing Transcript*, JA 00874, 00878.  Plaintiff's work as a BES Math and Science Resource Teacher involved a significant amount of time: a) collecting, organizing, and analyzing data, b) working collaboratively with teachers for lesson plans, scaffolding tasks for access, strategies, and developing individualized action plans for students. See JA 00878-879.

A small portion of time as a Math and Science Resource Teacher was devoted to attending Collaborative Learning Team ("CLT") meetings, testing students, pulling resources for teachers, or modeling lessons. See JA 00979-993; JA 00878-879. Plaintiff worked remotely as a Math and Science Resource Teacher for FCPS from March of 2020 through February of 2021. See JA 00923.

For the period of time between January 30, 2022 and June of 2022, Plaintiff believed she could perform the substantial amount of her job function remotely. See *Donna Jones Declaration I, February 29, 2024, Ex. A*, JA 00227-229. Ms. Jones's co-Math and Science resource teacher, with who she shared a workspace and was most familiar with Ms. Jones's work, believed Ms. Jones could perform her essential job functions virtually. *See* JA 00227-229; *see also Declaration of Monica Kim*, JA 00707-708, ¶¶3-9. *See also* JA 01073, L10-22; 01074, L1-3.

Plaintiff was not an interventionist. *See* JA 00227; *see also* JA 00700-701, ¶¶9, 13. Plaintiff's role did not include substitute teaching, and substitute teaching prevented Plaintiff from performing the essential functions of her role as Math and Science Resource Teacher. Requiring a resource teacher to substitute as part of a resource teacher's role also did not support the purpose of Title I funding for the special role of a resource teacher. *See* JA 00701, ¶11. Plaintiff's essential job functions did not involve working directly with students. *See* JA 00227-229. *See also* JA 00700, ¶¶8-9. Plaintiff's essential job functions did not include attending in-

person classes, co-teaching, working directly with students in the classrooms or one-on-one as needed. *See* JA 00227-229.

Plaintiff did not spend much of her day managing inventory and resources, if only a handful of days out of the school year. Plaintiff identified potentially a minimal 2% of her job entailed the functions of Paragraph 4, and that those tasks were shared with other resource teachers. *See* JA 00229, ¶6; JA 00701, ¶¶11-12, *Donna Jones Declaration II*.

### Disability

Plaintiff developed Reactive Airway Disease from exposure to mold, dust and breathable irritants while working for FCPS as of January 12, 2022. See *Stipulated Order, October 5, 2023, Virginia Workers Compensation Commission Jurisdictional Claim No: VA020-003-7876*, JA 00242. At a January 28, 2022 visit to a pulmonologist, Plaintiff was identified to have Reactive Airway Disease with chronic cough, shortness of breath, an abnormal chest scan, pulmonary nodules, and exposure to mold. See *Dr. Halabi Declaration*, JA 00601-602.

On or around January 30, 2022 Plaintiff emailed BES Principal Jackson-Muir indicating that Plaintiff had been experiencing breathing difficulties at BES, had masses in her lungs, and that she was having an upcoming surgery. See *Requests for Accommodation Correspondence Exhibit*, JA 00246-247.

### Contextual Background of Workplace Environmental Conditions

Prior to January 30, 2022, Plaintiff's workspace, Room 38, and nearby BES rooms had a long history of moisture problems, including mold. See *Workplace Environment Exhibit*, JA 00429-430, *Full IAQ's Exhibit*, JA 00407-408; *February 5, 2024 Guyron Brock Deposition*, JA 01143, L5-18.

Principal Jackson-Muir and FCPS leadership were aware of the ongoing moisture and mold issues in Room 38 and the adjacent rooms. See *Map of BES pre-construction*, *BES Campus Maps Exhibit*, JA 00219; see also JA 00880-881.

Significant construction was occurring campus-wide at BES between 2021 and 2022, with construction of over 40,000 square feet of an addition/additions and a full renovation of the existing school building. See JA 00220-224. The construction project lasted from 2020 through the spring of 2023. *See Keesha Jackson-Muir February 5, 2024 Deposition*, JA 01365, L5-14. Construction work pervaded the entire campus, with trucks and machines running outside throughout the school day, gas fumes entering the school building(s) and Room 38, and significant dust persisting throughout the campus and buildings. JA 01366-1369.

Between 2019 and January of 2022, Plaintiff noticed various symptoms (e.g. congestion, headaches, dizziness, tiredness, persistent coughing) while at Braddock Elementary, which would subside while away from the BES campus. JA 00874-877,

00880, 00885, 00901. Room 38 was not fully constructed throughout the time Plaintiff worked in or around the room with a temporary door, air holes to the outside, and a temporary partition wall. JA 01128, L13-17; JA 00886-891; JA 00468-482. Room 38 had an air ventilator that "pulls air from the outside. There's a cut-out in the brick exterior wall where the air is pulled through." JA 01145, L12-14. Issues in Room 38 included, but were not limited to, a malfunctioning air ventilator unit, musky resource materials, musty odor, significant dust accumulation, and a misplaced ceiling tile. JA 00886-896; JA 01121-01128; JA 00468-481. The hallway outside of Room 38 had no ceiling, with exposed piping and hallways throughout BES lacked ceiling tiles, some without flooring throughout 2021 through June of 2022. JA 00230-241. Fumes related to construction or "renovation" permeated the BES building(s). JA 00897, 00917, 00918-919, 00921-922, 00924-925, 00937-939, 00942, 00951-953, 00959. Standing water was a recurring issue on the BES campus, and in the outdoor area outside of Room 38. JA 01122-1123; JA 00898, 00921-922, 00932, 00935-936, 00952, 00963. Flooding occurred in Room 38 in September of 2021. JA 00900; JA 01122-1123.

Co-workers of Ms. Jones identified serious workplace air quality health concerns at BES and the areas where Ms. Jones worked. For Room 38 and the BES campus for 2021-2022 school year Ms. Kim identified issues to include: "whenever I was coming into that room, um, I was feeling nauseous," "I started picking up that

10

dry cough that Donna had," "I started having bloodshot eyes all the time. I was so tired, like daily," "I started having these stabbing pains in my head," "the ceiling tiles were […] concave. There were several of them that were bent […] some were stained like with water […] it smelled like wet rag," "there was like film everywhere, like this orange like dusty brownish film all over our bookcases," "the ventilator that was like constantly leaking water," "there was an incredible gas odor, um, for like months," "it was so hard to breathe in there with the amount of dust". JA 00927-943.

A fellow resource teacher, Jenna Murgia, who started work at BES in October 2019, stated regarding Room 38 and the rooms which shared the hallway, that "every day I was smelling fumes," "there were times where it smelled like gasoline […] other times, it, it just smelled to me just like some sort of chemicals," "all the different smells that I was smelling and getting lightheaded," "you could smell the different smells all throughout the hallway," "you could see looking up at the ceilings and in my room too […] there's just like brown, like water, liquidy kind of spots," "in my personal room, there's a hole in the wall," "the floors, they're all throughout the building, there's debris," "you can visibly see holes just walking down the hallway […] the particles all around the little holes". JA 00949-955. Ms. Murgia stated that she had air quality concerns "every single day" during the time she worked at BES (through spring 2022). JA 00950; and see Valeria Foarce testimony, JA 00958-967.

11

The BES Principal voiced concerns in a September 17, 2021 email to senior FCPS administration, stating that "trucks with the truck exhaust facing the building and our currently antiquated ventilation system sucking in the exhaust into classrooms and teachers needing to leave early, due to feeling ill", "smoke from the machinery seeping through the ceilings and forming smoke clouds in the hallway (near gym-Door #4)", "thick layer of smoke" in the main artery of the building, and the "smell of sewage/waste […]seeping through the walls and into classrooms causing teachers needing to leave early due to feeling ill". JA 00449-456.

At one point, Assistant to the Principal Ms. Sooknanan emailed all BES staff on November 30, 2021, "If you are smelling a strong scent of tar outside the premises, the construction crew would like us to know that the workers are installing the roof and they are using "tar". Mr. Carros told us that this [is] not harmful to you or your students. You can choose to have indoor recess." JA 00457. On January 28, 2022 Ms. Sooknanan also informs BES staff that there is a "scent" that is "connected with the materials being used" for "work that is being done today on the roof." JA 00503.

On January 30, 2022 Ms. Kim (Room 38 co-worker of Ms. Jones), emailed FCPS administration regarding "strong gas fumes" and the adverse physical affects she endured correlating with inhaling the fumes, indicating that "I had to leave the room" and "it was very difficult to breathe and concentrate. This weekend, I have

been feeling very dizzy, light-headed, unable to concentrate and extremely fatigued." JA 00505-506. Ms. Kim further identified other recurring or ongoing air quality concerns at BES in the email, requesting telework "to mitigate health risks" and identifies that she does not feel safe in the building, and that there are vulnerable staff and students at BES, including "someone with a lung condition". JA 00505-506. On January 30, 2022, in response, FCPS Superintendent Scott Brabrand tells Ms. Kim, "You should report to work." JA 00504.

On January 30, 2022, Principal Jackson-Muir emailed Ms. Jones and Ms. Kim that "the construction team is working on the roof on the opposite side of the building using asphalt/tar. This chemical is approved by FCPS for usage and FCPS would not use a chemical that is hazardous/harmful. They shared that the chemical smell is not coming through the HVAC system. Most likely the smell is coming from opening and closing of the gym door #4." JA 00508. On January 31, 2022 12:35pm, Ms. Sooknanan emails BES staff that "working will be taking place again on the Roof today, and there will be a scent outside the building from the materials being used on the roof. If you have any questions, please contact the Admin team." JA 00509. At 1:17pm Ms. Kim replies to the email and asks Ms. Sooknanan to come to Room 38 to smell the fumes, and requests to know "what chemicals and products we are being exposed to. Donna and I are not able to work in here any longer. We cannot breathe this in nor have peace in mind to concentrate in here – it is not fresh air." JA 00509.

13

On February 1, 2022, Principal Jackson-Muir emailed BES staff that interior and exterior "finishes" "to include but not limited to the roof (using asphalpt/tar) [sic]", regarding roofing "Ordors" [sic]. JA 00512. Ms. Kim replies on February 1, 2022 at 11:04am that "This morning, again, I felt dizzy, nauseous, and short of breath while walking very slowly up steps. I am very concerned that these fumes are affecting my health and others in the building. Unlike the workers who are working in open air conditions, inside the building, we are surrounded by these fumes in closed spaces. The recommendation given in your attached document, to reduce exposure to odors, is to "keep windows closed". However, yesterday you expressed that the strong odor in hallway near Rm. 38 may be due to the frequency of the nearby gym door opening and closing. Closed doors then trap the fumes in our building and rooms. The other recommendation given is to "stay out of restricted areas". What areas in the building are restricted? I am kindly requesting for more information about what specific chemicals we are being exposed to and any potential risks they pose to our health and safety." JA 00511.

Room 38 was never completely renovated during the time Plaintiff worked in and around that room through June of 2022. JA 01128, L13-17. Plaintiff designated an expert to discuss particular air quality issues at BES that were dangerous to Plaintiff. See, JA 00750, *Expert Report of Michael Menz.* Any evidence of water intrusion, high levels of summer humidity, and a history of moisture issues reflects

14

on the quality of the workplace environment of the wing in which Plaintiff worked, to include materials that were transferred from Room 2A to Room 38, dust, and lingering moisture posing long-term health risks. *See*, *Expert Report of Michael Menz*, JA 00760-712 (at ¶¶22-24, regarding the association between dampness and adverse health outcomes); *see also* JA 00758-759 (at ¶21, dispelling the usefulness of a visible mold inspection by identifying that mold spore fragments "smaller than the limit of detection using an optical microscope […]can penetrate deeper into the respiratory system and likely are more toxic due to the increased surface area per mass in the particles causing increased exposure and burden.").

### Requests for Accommodation

After January 28, 2022, Plaintiff was informed she would need to have a bronchoscopy lung surgery of "immediate removal of lung masses" scheduled for February 8, 2022. On January 30, 2022 Plaintiff requested telework of her principal for the days following surgery due to "possible lung/breathing sensitivity afterwards" and "to stay safe from possible additional environmental factors." JA 00247. Plaintiff is referred to "ADA Specialist" Lori Gibson who talks with Plaintiff on January 31, 2022. JA 00246-247.

Ms. Gibson referred Plaintiff to seek workers compensation because in Ms. Gibson's words, Plaintiff "insists it is related to mold at the school". JA 00248.

While Ms. Jones is requesting to telework because of the upcoming lung surgery, Ms. Gibson claims on February 1 that "Because you want to telework to avoid taking leave, not necessarily because of a disability, then that would fall under the telework provisions [School Regulation 4417 concerning telework]". JA 00249. Ms. Gibson indicates that it is unlikely the Principal will grant telework and that "If you feel you are in need of any accommodations, then please submit a request", despite the request already having been submitted 2 days prior. JA 00249.

Ms. Gibson further states on February 2 at 11:46am, "you need to qualify as a person with a disability in order to receive ADA accommodations" and "If you feel you are in need of accommodations for a disability, then please submit the form", reiterating that "I doubt your principal will be able to approve telework." JA 00250. However, FCPS Telework Regulation 4417 specifically contemplates telework in a period of time after recovery from a surgery or procedure. See FCPS Regulation 4417.1, JA 00397.

On February 7, 2022, Plaintiff and her doctor submit FCPS's "Request for Reasonable Accommodations" Form, complete with her request on page 1 requesting telework "for the duration of recovery following this lung procedure, as my work building is currently under construction with possible aggravating [sic] environmental factors to my breathing." JA 00259-266, 00262. Dr. Halabi indicates to ensure no mold exposure at work and recommends teleworking for a period of 3

16

weeks. JA 00263, 00265. Contemporaneously Plaintiff emails the Principal and Ms. Gibson regarding the request and the removal of her lung mass. JA 00268-269.

On February 7, 2022 at 3:00pm Plaintiff informs Ms. Gibson that it was "breathing issues and shortness of breath" as the reasons for why the surgery occurred "so quickly". JA 00270. As of February 17, 2022, no telework request was approved by the Principal or Ms. Gibson. JA 01131, L8-14. On February 17, 2022 at 8:22am Plaintiff indicated by email that, "After taking sick leave last week, I came back to work this week; however, am experiencing shortness of breath and light headedness at the workplace". JA 00278.

On February 15, 2022, after the surgery, Dr. Halabi and Plaintiff submit another FCPS Official "Request for Reasonable Accommodations" Form reiterating on page 1 the construction issues and the mold issue, with an updated telework request from February 15, 2022 to March 31, 2022, and a post-it note to that effect. JA 00610-615. Ms. Gibson responded on February 17 at 8:38am that "telework is not possible due to the essential functions of your job". JA 00278.

Plaintiff explained on February 17 at 8:54am that she could do her job from home and that "I am not willing to sacrifice my health for a few weeks that my pulmonologist recommends for me safely recovering from respiratory illness." JA 00278. Internal notes from Ms. Gibson on February 17, 2022 reveal Ms. Gibson was

focused on the issue of mold, noting: "[There are] No mold issues at school" and "She claims she didn't know the doctor wrote about mold on the sheet", "Telework is not an option", "insisted her job can be done via telework". JA 00290-291.

A phone call takes place between Plaintiff and Ms. Gibson, where Ms. Gibson in no uncertain terms tells Plaintiff telework will not be approved and that Plaintiff needs to ask for something FCPS will actually approve. JA 01253, JA 01258-1259. On February 18, 2022, Plaintiff stresses in a 10:39am email that FCPS's offerings "are considerably less than what was recommended by my pulmonologist who recommended full telework through 3/31/22". JA 00293.

Plaintiff leaves a voice message to the "EER Office" requesting revisiting the issue of telework, stating that "what I'm going through is fairly urgent" and "every night I come home, and I feel like I have to go to Urgent Care for shortness of breath and light headedness. And I feel like I'm stuck in the process. My doctor wants me to take off for several weeks, just to work – to telework from home. And my work and ADA office I think they just, they think I can't do my job from home. But I do think I could do a lot". JA 00304, p. 2-3. FCPS Director of EER Catherine Carrol forwards the voicemail to Ms. Gibson and does not reply to Plaintiff. JA 00303.

Ms. Gibson identifies "what we are able to accommodate": 1) Teleworking for one morning a week for a virtual meeting ending at spring break and 2)

18

Additional PPE. JA 00294, 00297. The weekly meeting was already taking place virtually. JA 01275, 01290; see *FCPS's Answer to Plaintiff's Requests for Admission No. 2*, JA 00515. BES was already distributing free PPE to teachers who wanted PPE. JA 01276, L12-20. These accommodations did not change or modify Plaintiff's work at BES, with the exception of being at home for a virtual meeting one morning a week until spring break, a time period of roughly 3-4 weeks. JA 01082-1083.

On February 28, 2022 at 7:33pm Plaintiff explains she is vulnerable to the Coronavirus and its variants and that Principal Jackson-Muir indicated staff should complete an ADA form if they have health issues compromised by working with unmasked colleagues and students, while asking for reconsideration of the denial of telework through 3/31/22 as she is "trying to work in a safe environment that minimizes risks to my health." JA 00298-299.

On March 1, 2022, EER Director Catherine Carroll considers Plaintiff's renewed requests for telework but does not intervene with the continued denial of accommodations. JA 00298-300. In response to Plaintiff's renewed requests, FCPS informs Plaintiff on March 2, 2022 that if she "rescinds" the "accommodations" she faces reassignment or if reassignment cannot be accomplished, then Plaintiff would be forced to "retire, resign, or FCPS would separate you from employment because you cannot be reasonably accommodated and you can no longer fulfill the essential functions of your job." JA 00305.

19

On March 3, 2022 Plaintiff emails her Principal that she is vulnerable to COVID-19 and identifies that she felt threatened and intimidated by Ms. Gibson to be forced to take the token accommodations, to which the Principal refers Plaintiff to the EER Office, the same office which directed Plaintiff back to Ms. Gibson. JA 00310-313. On March 16, 2022, Ms. Gibson emails Ms. Kim and Principal Jackson-Muir that, "it was obvious that just about everyone is sharing space, both in the trailers and in the building, due to the massive renovations. […]Room #38 offers more privacy to you than most other spaces." JA 00316-317. Ms. Kim identified in response that various workspace "options" presented are unworkable, and that "I have been without a safe, adequate work space since August 2021, the beginning of the school year." JA 00315-316. At this time, FCPS substantially denied a telework request from Ms. Kim, posing the option to accept the offered "accommodations" or "retire, resign, or FCPS would separate you from employment". See p. 92, March 17, 2022. JA 00318. FCPS and EER Director Catherine Carroll, in fact, developed that language as a template to respond to employees who questioned accommodations. See FCPS 9/27/21 ADA Template, JA 00405-406.

Ms. Jones identified to the Principal on April 19, 2022 at 9:33am that she is "feeling dizzy and light headed today" and she is "short of breath and the mask is really inhibiting my breathing, yet I am uncomfortable not to wear it because of my compromised respiratory condition." JA 00322. On April 22, 2022 at 11:32am

Plaintiff informs BES Principal and Assistant Principals that her "lung condition has been worsening over the past few months" and that "I am very short of breath and light headed with speaking through a mask all day", further identifying being anxiousness due to her compromised respiratory condition, and identifying an upcoming "invasive surgery" for May 3, 2022. JA 00320-321. Plaintiff's doctor submitted a subsequent form on April 25, 2022 recommending that Plaintiff telework between 4/25/22 and 5/31/22. JA 00324-328

On April 27, 2022 at 4:10pm Plaintiff reached out to other administrators for the request for telework, and was not accommodated. JA 00332. Ms. Gibson questioned why the doctor was asking for telework for his patient because Ms. Gibson believed there was no danger of mold exposure at FCPS and continued to deny telework. JA 01295-1299, 01317-1319. On May 5, 2022 Ms. Gibson emailed a workers compensation claims investigator Holly Harris that "We did provide her with ADA workplace accommodations but the full-time telework request was not able to be accommodated because she is a teacher." JA 00334. Ms. Jones was not a classroom teacher. Ms. Gibson further states in the email that, "Her doctor repeatedly faxed the same paperwork alleging possible mold in the workplace. There was an extensive investigation and repeated worksite testing performed- we gathered reports from the principal and Guyron". JA 00334.

Ms. Gibson further explained in a May 5, 2022 email to Holly Harris that "the essential functions of [Plaintiff's] job [...]cannot be accommodated via telework." JA 00333. Lori Gibson, Principal Jackson-Muir, and Guyron Brock are neither pulmonologists nor doctors. JA 01231, L19-22; JA 01363, L2-3; JA 01135, L11-18. FCPS did not request an independent medical evaluation to question Dr. Halabi's assessment of Plaintiff from January 30, 2022 through the end of the 2021-2022 school year. *FCPS's Answer to Plaintiff's Request for Admission No. 3,* JA 00515.

On May 12, 2022, Dr. Williams indicated that Ms. Jones has "had significant dust exposures" and her "spirometeries have consistently revealed evidence of obstruction", that Plaintiff "is wheezing and bronchospastic. It is my medical opinion that she has occupational reactive airway disease/asthma due to the presence of dusts and molds." Dr. Williams recommended for Plaintiff "to work from home until the workplace is dust and mold free or she is located to an area where no construction is taking place." JA 00340. FCPS received the recommendation on May 16, 2022 and maintained that Plaintiff was working in an environment that was dust and mold free. JA 00342, 00347

Ms. Jones requested further accommodation of telework by email on May 17, 2022, attaching photos demonstrating that the entire campus was still under construction contrary to Ms. Gibson's claim that trailer A3 was free from construction. JA 00342-345, JA 00346-362. The BES campus remained under full

construction or renovation throughout the 2021-2022 school year. JA 001365, L5-14. On May 19, 2022 FCPS further denied that telework was not possible due to "the essential job duties of her position." JA 00365. Plaintiff provided a timeline of the limitations of her disability and the environmental factors she encountered throughout 2022. JA 00366-375. On May 25, 2022, Plaintiff continued to contest FCPS's position regarding accommodations. JA 00376-377. On May 26, 2022, FCPS continued to deny telework for Plaintiff. JA 00380. Ms. Jones and her doctor never use the term "full-time telework" or request it on a permanent or indefinite basis.

On May 27, 2022, in response to an FCPS email regarding COVID-19 at BES, Plaintiff identified shortness of breath, extreme anxiety, and restricted breathing at 75%, among other health issues related to her breathing and lungs. JA 00383. Thereafter, seeing the end of the school year and after FCPS's four months of continued insistence on denying any meaningful telework, Plaintiff requests intermittent leave. JA 00388-389.

On May 31, 2022 Ms. Gibson responds to Plaintiff but Plaintiff identifies that she is uncomfortable speaking to her and continues to explain the aggravating environmental factors at BES for her condition. JA 00388-340. Despite Plaintiff's condition, she continued to work and perform her essential job functions from January 30, 2022 until she transferred voluntarily to another FCPS school on her

23

own application. JA <u>01294</u>, L1-14; JA <u>01348</u>, L2-8; JA <u>00365</u>.. No reassignment or transfer was offered by FCPS to Plaintiff as a request for accommodation. JA <u>00365</u>.

On June 9, 2022 Ms. Jones informed Karl Frisch, in a letter addressed to the Fairfax County School Board, of the physical issues she faced from the environmental conditions at BES, with no response from Mr. Frisch. JA <u>00393-396</u>. No response was received.

## SUMMARY OF ARGUMENT

The District Court erroneously granted summary judgment in favor of FCPS. In so doing, the District Court failed to apply a temporary factor to the issue of finding a reasonable accommodation which could be provided. The District Court failed to review the distinct temporary time periods separately. The District Court erroneously found that FCPS in good-faith engaged in the interactive process, despite refusing to consider any meaningful amount of telework and rejecting other modest accommodation requests. The District Court erroneously failed to credit evidence in the light most favorable to Ms. Jones concerning her job responsibilities, whether or not she was open to less than full-time telework, and what Ms. Jones's doctor was recommending.

For Issue II, the District Court, in denying Ms. Jones summary judgment against FCPS on liability, failed to find that FCPS's stated accommodations were

unreasonable as a matter of law. The District Court also failed to properly account for the undisputed facts properly established by the parties' VWCC Order that the BES workplace environment caused Ms. Jones's disability.

## STANDARD OF REVIEW

In reviewing the District Court's decisions on summary judgment, this court reviews de novo a district court's grant of summary judgment, viewing all the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmovant. *Wilson v. Dollar General Corp.*, 717 F.3d 337, 342 (4th Cir. 2013), *citing Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 460 (4th Cir. 2012). Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *Id*.

## ARGUMENT

**ISSUE 1**: In granting summary judgment, the District Court erroneously concluded that:

(1)     Ms. Jones did not establish that a reasonable accommodation existed which FCPS could provide and failed to provide as the accommodation requests were of reasonable temporary time periods, and the court erroneously applied tests from cases where employees sought permanent or indefinite accommodations.

### (A)     Temporary Requests May Be Reasonable Despite not Meeting an Essential Job Functions Test

The District Court did not find that what FCPS offered Ms. Jones was reasonable or unreasonable. Instead, the District Court ruled that Ms. Jones could

not demonstrate that a reasonable alternative accommodation existed to offer her. This misstates the facts and misinterprets the law. Ms. Jones never indicated that she only wanted fully remote work on a temporary basis as the District Court presumed. Ms. Jones requested meaningful telework and the opportunity for her condition to improve away from the BES environment. Ms. Jones was never given that chance, despite repeated requests for any meaningful accommodation to allow recovery while working. The formal accommodation response from March 2nd foreclosed on any other accommodation other than one morning a week telework for a zoom meeting over a 4-week period and the provision of free Personal Protective Equipment ("PPE").

The District Court erroneously cited *Womble Carlyle Sandridge* for the proposition that Ms. Jones must establish that all of her essential job functions be performed in a fully remote environment, even on a temporary basis. The holding in *Womble Carlyle* was predicated on the employee's <u>permanent</u> injury, for which the employee had taken a 6 month leave of absence. *EEOC v. Womble Carlyle Sandbridge & Rice, LLP*, 616 Fed. Appx. 588, 592 (4th Cir. 2015). After the end of the leave of absence, the court identified that "there were too many tasks she could not perform with modifications". *Id.* A temporary accommodation, whether leave or telework, may be reasonable even if the accommodation does not allow the employee to perform some or all of her job functions provided that the

26

accommodation will allow the employee the requisite time to recover such that the employee ultimately may successfully return to work. *Hannah v. United Parcel Serv.*, 72 F.4th 630, 637 (4th Cir. 2023) (affirming that granting of leave was a reasonable accommodation) (*citing Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185-86 (2d Cir. 2006) (discussing leave as a reasonable accommodation as a means to eventually return to work). FCPS did not provide leave or offer leave to Ms. Jones, although referenced leave outside of FCPS's accommodation process prior to Ms. Jones's first surgery. Nor did the District Court find that leave was offered in making its ruling.

FCPS relied on *Hannah* for the proposition that telework was not reasonable because, in their argument, it did not allow Ms. Jones to perform the essential functions of her job. JA 00102. However, *Hannah* specifically contemplated forms of accommodation that would eventually allow an employee to return to full-duty, whether by temporary leave or in this case temporary partial telework. *Hannah* explicitly differentiates analyzing the reasonableness of a temporary accommodation (leave) opposed to the analysis of a permanent accommodation. The employee in *Hannah* rejected the temporary accommodation offered, only requesting a smaller truck or van with softer suspension or a reassignment from his employer ("UPS"). *Hannah*, 630. UPS provided *Hannah* a padded seat but declined to provide a smaller van, citing that it would displace somebody from another route,

27

be insufficient to cover his responsibilities, and violate the collective bargaining agreement. The court explained that an accommodation would require special circumstances if it violated a collective bargaining agreement otherwise it would not be reasonable on its face. *Id.*, 635 (*citing US Airways, Inc. v. Barnett*, 535 U.S. 391, 403 (2002)). UPS previously permitted Mr. Hannah to work sporadically between December 2017 and October 2018. *Id.*, 630. Instead of accepting additional leave, Mr. Hannah rejected leave, returned to work, and only requested the smaller vehicle. Mr. Hannah did not present any temporary alternative accommodation to the leave offered. Mr. Hannah's physician provided a return to work date of November 1, 2018 without restrictions, implying that there was no further medical need for accommodation. *Id.*, 638.

Ms. Jones requested discrete periods of time to recover from surgery and worsening symptoms. By contrast, the employee in *Womble Carlyle Sandbridge* presented no evidence of ever requesting any accommodation (a prerequisite to triggering a duty to engage in the interactive process), testifying that "she did not tell anyone that she needed an accommodation before her disability leave", yet the District Court still applied this finding in its analysis. *Womble Carlyle Sandbridge*, at 594, n. 4. Ms. Jones made the following 17 requests:

| Date | Request (See JA 00246-00396) | Sent to: |
|------|------------------------------|----------|
| 1/30/22 | Request to telework for 3 days following lung surgery (JA 00246-247) | Principal Jackson-Muir |

28

| | | |
|---|---|---|
| 2/7/22 | Request to telework for 3 weeks following lung surgery, 2/8/22-3/1/22 (JA 00262-266) | FCPS ADA Office |
| 2/15/22 | Request to telework for 6 weeks, 2/15/22-3/31/22 (JA 00272-277) | FCPS ADA Office |
| 2/17/22 | Request for telework, identification of shortness of breath and light headedness at the workplace (JA 00278) | EER and ADA Office |
| 2/17/22 | Request by telephone for telework, identification of shortness of breath and light headedness at the workplace (JA 00304) | EER Office |
| 2/28/22 | Request for telework, identification of additional coronavirus considerations for underlying respiratory illness (JA 00301-302) | EER and ADA Office |
| 3/3/22 | Reiteration/renewed request for telework, identification of health risk for Coronavirus (JA 00313) | Principal Jackson-Muir |
| 4/14/22 | Reiteration/renewed request for telework, request for someone to hear her request and concerns (Complaint referenced on JA 00332) | EER Office |
| 4/19/22 | Identifies ongoing physical limitations working in person (JA 00322-323) | Principal Jackson-Muir |
| 4/22/22 | Identification of worsening conditions, breathing issues wearing a mask, Coronavirus issues, upcoming invasive surgery, anxiety. (JA 00319-323) | Principal Jackson-Muir, other BES Admin |
| 4/25/22 | Request to telework 4/25/22-5/31/22 including following surgery 5/3/22 (JA 00324-328) | FCPS ADA Office |
| 4/27/22 | Request for response to 4/25/22 Telework request (JA 00332) | FCPS Administrators, Sean McDonald, Amielia Mitchell, Catherine Carroll, L. Gibson, Principal Jackson-Muir |
| 5/17/22 | Request for telework, identification of reactive airway disease, dust (JA 00340-341) | FCPS ADA Office/Legal |
| 5/25/22 | Identification of Accommodation Issues, renewed requests for response (JA 00376-379) | FCPS ADA/Legal |

29

| 5/27/22 | Identification of shortness of breath, anxiety, breathing issues, COVID issues (JA 00383) | Principal Jackson-Muir, FCPS BES Admin |
| 5/31/22 | Request for intermittent leave because no telework was provided (JA 00388-390) | L. Gibson |
| 6/9/22 | Request for leave and attention to health concerns at BES (JA 00393-396) | FCSB |

In response, FCPS rejected any accommodation other than what was provided in the March 2nd email.

The District Court erroneously required Ms. Jones to prove "that she could have performed all of the essential job functions from a completely remote location, even on a temporary basis." Dkt. 77, p. 17. JA 00800. However, temporary accommodations routinely include light-duty, leave, job restructuring, or other accommodations in which an employee does not perform all essential job functions, with the goal that the employee eventually return to full-duty after the temporary accommodations have provided the intended time to improve and rehabilitate.

FCPS never provided a meaningful temporary accommodation and was never presented with a permanent request for the relevant time period in this matter (the second half of the 2021-2022 school year). The failure to provide temporary accommodation was not without significant impact. After being denied any meaningful telework in February and March, Ms. Jones experienced worsening symptoms which were manifested in part on her CT scan from April 4, 2022. Ms. Jones explained that while previously she had three pulmonary nodules in her lungs,

she had up to a dozen as of her April visit, at which point Ms. Jones believed she was "going to die" and felt "pure despair and hopelessness". JA 01037-1038. Ms. Jones was never provided or offered the opportunity to recover from her surgery and improve her condition away from the BES campus. JA 00601-602. Ms. Jones's doctor stated that:

> "The patient's symptoms of chronic cough, shortness of breath and abnormal findings on diagnostic imaging of the lung, abnormal radiologic density of the nodular worsened as the patient continued working in her existing work environment and building at Braddock Elementary School. Due to the increase in severity of her symptoms, ADA was edited and extended for several more weeks under the assumption there would be symptom relief when removed from the work environment. Repeat chest CT scan on 4/4/22 revealed new, tree in bud, densities emerging in the patient's right upper lung lobe." JA 00602. And: "The denial of requests for telework accommodation to remove Ms. Jones from the campus toxins caused her disability to intensify during the period of January to June 2022. […]Ms. Jones pulmonary nodule seen on her CT chest also grew resulting in a lung biopsy in May 2022, and the cultures revealed that she had contracted a secondary Mycobacterium Avium Complex infection of the lungs. The medical cytology pathology report diagnosis is benign pulmonary parenchyma with chronic and granulomatous inflammation. Exposure to environmental elements such as dust, mold, and or other chemicals are known to cause lung granulomas. She was referred to Infectious Disease Physicians that lead to a treatment plan of high intensity antibiotics for the next year. Ms. Jones experienced multiple side effects as a result of the yearlong treatment with antibiotics including insomnia, nausea, and gastrointestinal side effects." *Id*.

In *Elledge v. Lowe's*, the employer approved leave for an employee who underwent four surgeries on his knee. After returning from leave, the employer additionally approved the employee's request for light-duty for a period of sixty

days, and subsequently approved a temporary extension of the same accommodation. The employer also offered a motorized scooter as an accommodation reasonably calculated to address the precise limitations of employee's disability in the workplace, which the employee rejected. Only when the employer learned that the employee's condition had become permanent, did the employer decline to provide the only accommodation requested. Even then, while the employer maintained that he could not remain in his current position due to essential job functions, the employer still offered to network on his behalf regarding vacancies he was interested in or, alternatively, to help shift him to a less physically demanding manager level role. Here, the 4th Circuit recognized that the employer "made reasonable, sensitive attempts to accommodate an indisputably valued employee in his present position." *See Elledge v. Lowe's Homes Centers, LLC*, 979 F.3d 1004 (4th Cir. 2020). Notably, the Fourth Circuit found these accommodation attempts to be "reasonable [...and] sensitive attempts", which included temporary leave and light-duty which, by nature, left the employee unable to perform certain essential job functions for the temporary periods(s).

The relevant cited case law in the record is further replete with distinguishable circumstances where the employer provides the employee with temporary accommodation, often numerous times, before finally making an ultimate determination about accommodating a permanent condition on a permanent basis

which had previously been temporary. In *Perdue v. Sanofi-Aventis US, LLC*, the employer initially approved FMLA leave and short-term disability benefits for a temporary period of time. Only once the employee's doctor informed the employer of more permanent restrictions, the issue of essential job functions became relevant as the employee rejected limiting travel arrangements, improving the comfort of her vehicle, and potential reassignment, and only requested a job-sharing arrangement, which was rejected as the ultimate accommodation request for a permanent condition. *See Perdue v. Sanofi-Aventis U.S., LLC,* 999 F.3d 954 (4th Cir. 2021). In *Tyndall v. National Education Centers*, the employer permitted the employee to take sick leave, leave early, and take breaks. The employer provided assistance and offered rides home when the employee felt ill. The employer approved numerous absences, including a ten-day leave of absence for her condition. Only when the employee requested significant leave for an issue unrelated to her condition, did the employment arrangement end, and did the essential job functions became materially relevant. *See Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209 (4th Cir. 1994).

In *Tartaro-McGowan v. Inova Home Health, LLC*, the Fourth Circuit identified the necessity of the employee and employer to work together in finding a reasonable and effective accommodation. Tartaro-McGowan requested an accommodation for an indefinite period of time to reduce her job duties. While the

employer offered on four occasions modified work arrangements, Tartaro-McGowan "flatly and repeatedly rejected Defendant's proposed accommodation and refused to propose any alternative". *Tartaro-McGowan v. Inova Home Health, LLC*, 2024 U.S. App. LEXIS 1074 *, *24-25, 91 F.4th 158, (4th Cir. 2024). Tartaro-McGowan also had effectively abandoned her job instead of accepting accommodations offered. *Id*., at *10. The Fourth Circuit posited,

> "Perhaps Tartaro-McGowan would have a stronger argument had she actually given Defendants' proposed accommodation a chance. If in practice it proved to be the case that unanticipated circumstances beyond Tartaro-McGowan's physical ability arose with such frequency as to effectively render Defendants' accommodation impracticable, she could have sought an alternative accommodation at that time. But having never tried to perform a direct patient care field visit using the accommodation made available to her, Tartaro-McGowan can offer only vague conjecture that Defendants' proposed solution was not viable." *Id*., at *30-31.

For her part and to her detriment, Ms. Jones attempted to work under the token, false accommodations FCPS demanded she accept, and subsequently Ms. Jones informed repeatedly FCPS that the accommodations were insufficient for her condition, to no avail.

34

In *Reyazuddin v. Montgomery County*, when the employee learned of a company software change affecting her ability to perform her job with her disability, the company provided various temporary accommodations, including reduced duty work and then reassignment to various other duties for six months until the company decided it would ultimately be too expensive to transfer the employee and make the new software accessible to her as she requested. The employee wanted meaningful work and did not want busy work or a cobbled-together set of lesser job responsibilities that she previously had even with the same pay and benefits. The Fourth Circuit vacated the employer's summary judgment award. *See Reyazuddin v. Montgomery County*, 789 F.3d 407 (4th Cir. 2015).

In *Wilson v. Dollar Gen. Corp.*, the employer initially approved the employee's request for medical leave for six weeks, followed by an additional two weeks. The employer also granted an additional day of leave upon employee's request, despite the employee's doctor clearing him for work. After the employee, whose condition had consistently worsened, was unable to provide any reason his condition would improve, leave was no longer a feasible accommodation, when it had been previously granted on a temporary basis. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337 (4th Cir. 2013); and see *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454 (4th Cir. 2012) (where the employer ultimately found that the employee could not fulfill the essential job functions adequately due to (presumably

35

permanent) issues outside of his disability (unprofessional conduct), and the employer previously approved requests such as to delay employee's required examinations and for medical leave).

In *Graves v. Finch Pruyn & Co.*, the employer accommodated the employee's disability by providing him light-duty work in the months preceding his surgery, three months of paid disability to recover, light duty work for two months after that, and then, after informing him that no more light duty work was available, paid disability leave for six months thereafter. Once the leave he was entitled to had run out, the employer offered the employee the options to either return to full work immediately, take a 64% pay cut and work at a desk job, or have a doctor state that he is totally disabled and take disability retirement with his disability pension benefits. At the employee's request, the employer even allowed him to work a sedentary job in the short time between his leave running out and the arrangement of his disability retirement. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181 (2nd Cir. 2006).

**(B)       The Interactive Process Allows the Employer and Employee to Discover Effective Accommodations**

FCPS failed to engage in the interactive process to establish a meaningful and effective reasonable accommodation for Plaintiff. "A reasonable accommodation

must be effective. *See U.S. Airways v. Barnett*, 535 U.S. 391, 400 (2002) ("the word 'accommodation'. . . conveys the need for effectiveness"). [A] reasonable accommodation should provide the individual with a disability with "an opportunity to attain the same level of performance, or to enjoy the same level of benefits and privileges of employment, as are available to the average similarly situated employee without a disability." 29 C.F.R. pt. 6130 app. § 1630.9. What is and is not reasonable lends does not lend itself to bright line rules but rather a case specific analysis. *See Tartaro-McGowan v. Inova Home Health, LLC*, 2024 U.S. App. LEXIS 1074, at *32, 91 F.4th 158 (4th Cir. 2024) (stating that "future courts must evaluate each [reasonable accommodation] case based on its own particular circumstances"). The purpose of an accommodation is to keep the employee working.[1]

Here, the District Court erroneously held that, in order to survive summary judgment, Ms. Jones was obligated to identify a specific accommodation she requested that would be reasonable. However, all that Ms. Jones needed to establish was that "a possible reasonable accommodation [...]could have been discovered in the interactive process and would have allowed [...her] to perform the essential

---

[1] "Although an employer may choose among effective accommodations, "forcing an employee to take leave when another accommodation would permit an employee to continue working is not an effective accommodation." *Denese G. v. Dep't of the Treasury*, EEOC Appeal No. 0120141118 (Dec. 29, 2016) (*citing Mamola v. Group Mfg. Servs., Inc.*, 2010 WL 1433491 (D. Ariz. Apr. 9, 2010); *Woodson v. Int'l Bus. Machines, Inc.*, 2007 WL 4170560 (N.D. Cal. Nov. 19, 2007)). Thus, "absent undue hardship, an agency should provide reasonable accommodations that permit an employee to keep working rather than choosing to put the employee on leave." *Id.*" *Thersa v. Louis DeJoy, United States Postal Service*, Appeal No. 0120182764; Hearing No. 440-2018-00103X; Agency No. 4J-530-0028-17, *14 (U.S. EEOC June 23, 2021).

functions of […her] position." *Wilson v. Dollar General Corp.*, 717 F.3d 337, 347 (4th Cir. 2013). The Fourth Circuit continues: "[L]iability for failure to engage in an interactive process depends on a finding that, had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions." *Id.* (*citing Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 91 (1st Cir. 2012).

In *Price v. Norfolk S. Corp.*, the district court found that, "a reasonable factfinder could conclude that Norfolk Southern's outright denial of Plaintiff's requested accommodation (to work half-days from home [for at least 3 weeks]) was not reasonable and constituted a failure to engage in the interactive process." *Price v. Norfolk S. Corp.*, 2022 U.S. Dist. LEXIS 175238 at *46 (E.D. Va. 2022). The "interactive process "involves an informal dialogue between the employee and the employer in which the two parties discuss the issues affecting the employee and potential reasonable accommodations that might address those issues," as well as "bilateral cooperation, open communication, and good faith." *Price*, at 44, citing *Allen v. City of Raleigh*, 140 F.Supp. 3d 470, 483 (E.D.N.C. 2015 (internal citation omitted). Additionally, the interactive process "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Wilson*, 717 F.3d at 346. A significant range of options existed to accommodate Ms. Jones because her schedule had a range of

38

flexibility and she was open to options to be away from the BES campus for more than one half day a week to recover. Teleworking 4 days a week, half a day each day of the week could have provided Ms. Jones a respite while substantially maintaining her productivity.

On February 17, 2022, after Ms. Gibson stated for the first time that "telework is not possible due to the essential functions of your job", Ms. Jones replied that she "can do telework", citing numerous job responsibilities which can be performed remotely, and that she "will explore other options if you have any for me, but I am not willing to sacrifice my health for a few weeks that my pulmonologist recommends for me safely recovering from respiratory illness." JA 00279. On March 2, Ms. Gibson identified that FCPS will only provide two accommodations which Ms. Jones must either accept or decline, in which case she may be reassigned ("the final accommodation we could offer you"), or she would be forced to retire, resign or be separated from employment. JA 00305. No analysis or effort was made by FCPS to determine Ms. Jones's schedule could be changed to allow for a meaningful length of time for telework and recovery away from the BES campus.

FCPS declined to even consider what essential job functions could be performed remotely on a temporary basis to see if a meaningful amount of remote work could be provided away from the BES campus. FCPS was unwilling to consider any amount of telework, even one or two days. JA 00290-291. JA 01303,

39

L2-11. On February 17, 2022, after Ms. Gibson informed Ms. Jones that telework was not going to be possible, Ms. Jones attempted to negotiate for something better than "considerably less than my pulmonologist recommended", but Ms. Gibson held the hard line of no telework. Ms. Jones also attempted to obtain mask breaks, full day telework on Thursdays, and interacting virtually with teachers and students from within the building, all of which were denied. JA 00295-296. On March 2, 2022, Ms. Gibson informed Ms. Jones that the only accommodations they would offer were attending a virtual meeting virtually one day a week for a short time period and free PPE. When Ms. Jones attempted to revisit or request new accommodations on subsequent occasions, Ms. Jackson-Muir and Ms. Gibson denied such requests and continued to refuse to offer a meaningful accommodation. JA 00310-311. No other accommodation would be offered accept reassignment, if even a possibility, "the potential reassignment would be the final ADA accommodation we could offer you". JA 00305.

FCPS failed to understand the precise limitations Ms. Jones's disability caused in the workplace such that FCPS could not identify meaningful accommodations to address those limitations. Ms. Jones repeatedly informed FCPS that she had significant problems breathing and breathing through a mask, yet was offered free PPE, to include masks, as a solution, despite Ms. Jones never having requested that "accommodation" and PPE being already plentifully available to her.

This was after Ms. Jones left the voicemail on February 17, 2022 explaining that "[m]y respiratory issues are such that it is very difficult for me to wear a mask", and that, "Every night I come home and feel like I have to go to urgent care for shortness of breath and lightheadedness. JA 00304.

When asked if Ms. Gibson considered an email where Plaintiff indicated that she was lightheaded, dizzy, and experiencing shortness of breath, Ms. Gibson replied, "So once we're talking about the accommodations, it's about what is it that they need and what can be accommodated based on the job. Not necessarily the reason behind it." JA 01268, L6-12. "[F]ull-time telework was not possible regardless of the reason for it." JA 01270, L11-13. Ms. Gibson refers to Plaintiff's requests for telework after February 7, 2022 as merely insisting on the same accommodation, or "extending" the accommodation, instead of treating the renewed requests as having new distinctions or as requests that identify shortcomings in the original "accommodations". JA 01296, L16-22; 01297, L1-8. BES Principal Jackson-Muir also did not consider any of Plaintiff's entreaties for accommodation to be new or separate from the 26 initial January 30, 2022 (or February 7, 2022) request. JA 00310. Principal Jackson-Muir even went so far as to say, "Her [Monica Kim] and Donna kind of merged together. So if Donna said something, it was on behalf of her and Monica. If Monica said something, it was on behalf of her and Donna. So they blend together", demonstrating how little Principal Jackson-Muir

41

considered Plaintiff's unique injury or situation when evaluating the request for accommodation. JA <u>01388</u>, L16-22; <u>01389</u>, L1-2.

While the District Court maintained that it refrained from passing judgment on the reasonableness of FCPS's "accommodations", it failed to fully decide whether FCPS in good faith engaged in the interactive process. FCPS refused to consider any meaningful amount of telework for Ms. Jones, refusing even one full day. The March 2nd letter includes threatening language regarding Ms. Jones's job security, such that it cannot be said that as a matter of law that threatening an employee's job security in order to accept accommodations is a good-faith effort to engage in the interactive process.

Plaintiff's job was not changed, altered, or modified by the purported two "accommodations", nor were the operations of FCPS or BES affected in any way by the purported accommodations. JA <u>00515</u>. FCPS's repeated rejection of Plaintiff's, and her doctor's, reasonable requests for accommodation rise to the level of deliberate failure to provide reasonable accommodations to Plaintiff and a deliberate failure to engage in any meaningful interactive process. Cf. *Johnson v. Shalala*, 991 F.2d 126, 132 (4th Cir. 1993) ("a complete failure to accommodate in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge.").

### (C)     The District Court failed to analyze evidence in the light most favorable to Ms. Jones

<u>Ms. Jones's Job Responsibilities</u>

The District Court erroneously failed to view Ms. Jones' deposition and affidavits in the light most favorable to her, giving little deference to Ms. Jones's statements regarding her job responsibilities and devoting many paragraphs to her purported "self-serving affidavits". Without any full detailed description of Ms. Jones' job description in the record, Ms. Jones created an overview of her responsibilities and job duties that she performed for the 2021-2022 school year. Contrary to the District Court's belief, the summary did not identify essential job functions versus non-essential job functions, nor did the summary indicate days of the week when job duties took place or times of the year when job duties took place, even though Ms. Jones allocated percentages to various tasks, correlating with the amount of time she spent on each task.

FCPS, in its March 2nd email, provides broad statements regarding job duties, but no specifics as to which function can be performed in whole or in part by telework, nor are the functions that the District Court cites cannot be performed remotely anywhere in the March 2nd email. More importantly, FCPS does not provide any analysis or evidence as to whether or not the stated essential job

functions would be required for the time periods Ms. Jones requested temporary meaningful telework.

The standard for self-serving affidavits to be disqualified from "light most favorable to plaintiff" analysis is a difficult standard to meet. Ms. Jones had thorough and unique personal knowledge and experience of her own job duties and those of her fellow resource teachers. *See Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 213 (4th Cir. 2017) (considering an affidavit when based on "personal knowledge or firsthand experience"). Even Principal Jackson-Muir herself indicated that Ms. Jones and her colleague Ms. Kim "have the autonomy to choose how they want to divide up the work [between the two of them]." JA 01345-1346. In *Coffey v. Chem. Specialties, Inc.*, a self-serving affidavit was disregarded because it lacked personal knowledge or experience concerning a central probative fact and was contrary to statements of other witnesses. *Coffey v. Chem. Specialties, Inc.*, 1993 U.S. APP. LEXIS 21430 at *3, 7 (4th Cir. 1993) ("While Coffey may testify as to whether he received MSD Sheets at Holly Hill, he has failed to establish any foundation to support his bold assertions that no one else (i.e. Lupold[2]) at Holly Hill

---

[2] The District Court erroneously states the finding as "that a chief executive's statements in a self-serving, uncorroborated affidavit – which are contrary to his prior sworn testimony – were insufficient to create a genuine issue of material fact". JA 00789. In fact, the relevant statements from the chief executive's affidavit were corroborated by the deposition testimony of two employees, and that affidavit

received MSD Sheets. Coffey's self-serving testimony which is utterly lacking in foundation does not establish a genuine issue of material fact.").

Otherwise, a party's own affidavit should only be disregarded in limited circumstances such as when a party defending a motion for summary judgment with their own affidavit directly contradicts a central fact previously established by their prior testimony, and disregarded only with respect to the contradiction(s) at issue. Such contradictory statements inherently lack credibility. *See Bickerstaff v. Vassar College*, 195 F.3d 435 at 454-455 (2nd Cir. 1999) ("Bickerstaff submitted her own affidavit stating that CEQs are not the primary instrument used to evaluate teaching and that Vassar's undue emphasis on her CEQs is evidence that she was treated differently than others" yet "admitted that Vassar relies almost exclusively on CEQs in evaluating teaching" and "authored a recommendation [...]in which she herself relied considerably on CEQs in evaluating the candidate's teaching ability."). Ms. Jones's declarations are detailed summaries of her job duties at BES providing insight into areas of the record that were left unexplored. Her personal experience and knowledge of her factual statements demonstrate reliability and credibility of her declarations which should not be disregarded, let alone in whole cloth. Courts

---

subsequently formed a part of the basis for both the district court and the court of appeals to rule in favor of summary judgment for the defendant in the matter.

are concerned with sham testimony and litigation gamesmanship not filling in gaps in the record.

The District Court erroneously states the finding of *Kennedy v. Allied Mutual Ins. Co.* as "observing that a party cannot create issue of fact by contradicting its own prior evidence." JA 00789. On the contrary, the Ninth Circuit in *Kennedy* concludes that that general rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony. Rather, the *Radobenko* court was concerned with 'sham' testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." *See Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991). The *Kennedy* court declared instead that before applying that sanction of disregarding the affidavit, the district court must make a factual determination that the contradiction was indeed a "sham". *Id.,* at 267. One way or another, the District Court failed to provide Ms. Jones' declarations their due consideration and weight in the light most favorable to her based on erroneous grounds.

The District Court cherry-picked a phrasing of Ms. Jones to conclude that she could not telework: "I had to access materials and resources… So whenever I'm planning, I had to constantly access that room". JA 00797. However, Ms. Jones was explaining that Room 38 was the only room that she had a desk where she could

46

work with her laptop, materials in a rolling cart, and monitors. JA 01029-1032. The question was asked regarding exposure to adverse air quality of Room 38, not whether accessing the room was an essential job function or how often during the work Ms. Jones needed to access the room. Ms. Jones's statement did not concern her ability to telework, nor did it concern her ability to perform job functions on a temporary basis remotely. The District Court also entertained wholly unsupported statements of counsel for FCPS for the proposition that Ms. Jones administered tests and could not administer tests remotely. *Memorandum Opinion*, p. 16, n. 10.

Contrary to the District Court's belief, BES had between 6-14 resource teachers. JA 00701, ¶10; JA 00228. In the light most favorable to Ms. Jones, when Ms. Jones indicates that certain tasks were shared with other resource teachers, she is referring to the 6-14 resource teachers at BES, not simply her and her colleague Monica Kim. JA 00227. Additionally, when Ms. Jones says that resource development, organization, and curation, to include inventorying and unpacking materials, was a shared task with other resource teachers, such task sharing was already part of a resource teacher's duties. Absorbing Ms. Jones' resource organization responsibilities for a temporary time period would not change any of the other resource teachers' job duties, or at worst cause only a *de minimis* impact on the other resource teachers. Ms. Jones also indicated that other tasks were shared between the resource teachers, such as student and classroom support.

47

The District Court also erroneously reasoned that because Ms. Jones performed some work in the classroom that she could not perform that work remotely. Ms. Jones' deposition testimony highlights her focus on teaching teachers how to teach their students, not any emphasis on Ms. Jones teaching the students herself. In her experience, Ms. Jones knew that she could effectively "teach the teachers" remotely or in person. The fact, prior to requesting accommodation, Ms. Jones provided instructional support in person or in a classroom does not disqualify her from doing so remotely as an effective and reasonable accommodation. The District Court's analysis falls short in three basic ways: (1) Whether or not a task could be performed remotely on a temporary basis; (2) Whether or not certain tasks deemed essential would actually be necessary during the temporary time periods of Ms. Jones' requests; and (3) If a schedule could be created to minimize in person work and maximize remote work for Ms. Jones to allow her recovery time away from the BES campus.

The District Court's opinion erroneously concludes that the declaration of Ms. Kim "does not state […] that Jones could perform all of the essential functions of her job remotely, and in any event, her conclusory subjective statement in the nature of an expert opinion is plainly insufficient to stave off summary judgment". JA 00796. However, Ms. Kim, as Ms. Jones's co-Math and Science resource teacher who shared a workspace with Ms. Jones and being most familiar with Ms.

48

Jones's work, did state in her Declaration that she expected Ms. Jones could effectively perform her job duties virtually. *See* JA 00227-229; *see also Declaration of Monica Kim*, JA 00707-708, ¶¶3-9. *See also* JA 01073, L10-22; 01074, L1-3.

### Ms. Jones was Open to Less than "Full-Time Telework"

Ms. Jones implied that she was willing to find workable solutions that provided her an effective accommodation to include a range of telework options. When Ms. Gibson stated that telework was not possible on February 17, 2022, Ms. Jones replied that she "can do telework", citing numerous job responsibilities which can be performed remotely, and that she "will explore other options if you have any for me, but I am not willing to sacrifice my health for a few weeks that my pulmonologist recommends for me safely recovering from respiratory illness." JA 00279. In this exchange, Ms. Jones cited numerous accommodations which FCPS, through Ms. Gibson, denied, such as ten-minute mask breaks, remote interaction within the school building with teachers and students, and Thursday afternoon telework. JA 00295 Ms. Jones also made numerous subsequent requests to revisit her accommodations up to and around her second surgery, yet FCPS failed to

reconsider any meaningful amount of telework or accommodation other than previously provided.

<u>Ms. Jones's doctor was not only Requesting a Mold and Dust Free Environment</u>

First, the District Court erroneously states the finding of *Cowgill v. First Data Techs., Inc.*, as "holding that the doctor's note was controlling on the question of the accommodation needs, not the representations of the plaintiff." *Cowgill v. First Data Techs., Inc.,* 41 F.4th 370, 379 (4th Cir. 2022). The court in *Cowgill* first considered the employee's own request, then looked to correspondence from her doctor to take a broad view of what was actually requested, reconciling conflicting positions regarding the definite or indefinite nature of the requests by examining all evidence. Quite simply, the medical note was not found to be controlling because it was a medical note, as erroneously assumed by the District Court. *Id.,* at 379 ("Our conclusion that Cowgill never asked for an automatic reduction in her work schedule is further supported by the written physician's note").

Second, Ms. Jones's doctor provided notes within the context of FCPS's accommodation form which included Part 1, nature of disability and impairment, specifically requesting provisional telework for the duration of her recovery because of possible aggravating environmental factors to her breathing. JA <u>00262</u>.

Additionally, Ms. Jones's doctor included a Post-It note for the first updated request for accommodation, February 15, 2022, stating "telework until date – thru end of March, 3/31/22". JA 00612. Read as a whole, her doctor is requesting provisional telework. And Ms. Jones, through her numerous requests to revisit the accommodation and the telework issue, was not simply seeking full-time telework in the light most favorable to her.

For Issue I, Ms. Jones requests that summary judgment in favor of FCPS be reversed and the matter to be remanded for further proceedings.

**Issue (II)**: The District Court erred by denying summary judgment for Plaintiff for the reasons stated in the Memorandum Opinion (Dkt. No. 77), Section III(A). In denying summary judgment,

(1)  The District Court erroneously concluded that FCPS did not fail to provide effective accommodation to Plaintiff in response to any of the independent requests for accommodation.

In the March 2, 2022 letter, FCPS presumes that absent the two "accommodations" provided, Ms. Jones would be unable to perform the essential functions of her job. In so doing, FCPS precludes Ms. Jones from choosing not to accept the accommodations. FCPS states, "if you wish to rescind your acceptance and decline the offered accommodations then we will move to the next step in the ADA process which involves reassignment. […] if there are no open positions for you for which you qualify (meaning reassignment is not possible), the next step in the ADA process would be for you to retire, resign, or FCPS would separate you

from employment because you cannot be reasonably accommodated and you can no longer fulfill the essential functions of your position." JA 00305. As a matter of law, the ability to telework "Thursday morning through spring break" for an already virtual meeting and the provision of "additional personal protective equipment" which was already provided to Ms. Jones failed to accommodate Ms. Jones in any way.

It is impossible to see FCPS's logic that taking away these two "accommodations" would somehow render Ms. Jones unable to "fulfill the essential functions of her position" as stated in the letter. The letter further forecloses on any other accommodations other than reassignment, stating, "reassignment would be the final ADA accommodation we could offer you". The denial of Ms. Jones's right to reject the accommodations is specifically prohibited by the Regulations to Implement the Equal Employment Provisions of the Americans with Disability Act. 29 CFR § 1630.9(d) (An individual with a disability is not required to accept an accommodation, aid, service, opportunity or benefit which such qualified individual chooses not to accept); and see § 1630.12 (Prohibition on retaliation and coercion).

(2)    The District Court failed to adequately consider the undisputed facts established by the parties' Virginia Workers' Compensation Commission ("VWCC") Order, that Plaintiff's workplace environment caused her disability as of January 14, 2022 and that Plaintiff's workplace environment remained the same from the time period of January 14, 2022 (and as contemplated in the VWCC Order) at least past the time period of Plaintiff's first request for temporary telework (March 31, 2022).

The District Court did not determine that a correlation between Ms. Jones's workspace and her condition existed, and stated that such connection was not at issue. However, Ms. Jones's doctor states that the conditions on BES campus and in and around her workspace posed ongoing risks for flare-ups and exacerbation of her reactive airway disease giving context to what could be a reasonable accommodation for Ms. Jones to recover from either of her two surgeries. FCPS presented a defense that the air quality at BES for Ms. Jones was safe although FCPS did not perform any elevated tests for Ms. Jones's particular air quality limitations and needs. As a matter of law, the VWCC order establishes that a range of environmental factors at BES caused Ms. Jones's disability. That Ms. Jones's workspace did not change until at least her moving into the trailer after spring break 2022 demonstrated a need for Ms. Jones to be away from the BES campus and her workplace environment as contemplated by her requested accommodations.

For Issue II, Ms. Jones requests that summary judgment be granted on liability on her behalf against FCPS or to have the matter remanded with findings that no accommodations were provided to her as a matter of law and that a correlation between her workspace and her disability had been established.

# CONCLUSION

Ms. Jones requests that this Court vacate the District Court's Order granting summary judgment for FCPS. Ms. Jones requests that this Court reverse the District Court's decision to deny Ms. Jones's motion for summary judgment and grant summary judgment in favor of Ms. Jones and against FCPS, remanding the case to the District Court for further proceedings. Ms. Jones requests any other relief in the interests of justice.

# STATEMENT REGARDING ORAL ARGUMENT

Oral Argument is requested because the record contains an expansive set of facts, circumstances, and information which requires clear interpretation to make an informed and fair decision. Oral argument will allow further clarity to the relevance of correspondence, testimony, events, and other information.

Dated :November 19, 2024.

> SUBMITTED BY:
> DONNA JONES, Appellant
> By Counsel:
> _____/s/_____
> Seth J. B. Obed, VSB#82482
> Robert M. Bohn, VSB#96888
> OBED LAW, PLLC
> 429 N Saint Asaph Street.
> Alexandria, VA 22314
> [t](703)567-4052;[f](703)894-4940
> sobed@obedlaw.com
> rbohn@obedlaw.com

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with FRAP 32(a) and FRAP R 32(a)(7)B)'s 13,000 word limit.

SUBMITTED BY:

_____/s/_____
Seth J. B. Obed, VSB#82482